IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation; and
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA a Connecticut
corporation;

    Plaintiffs,

v.

LUNA GOURMET COFFEE & TEA COMPANY LLC, a Colorado limited liability
company; and
BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC., a Colorado limited
liability company,

    Defendants.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

## INTRODUCTION

1.  In this insurance-coverage action, Plaintiffs The Travelers Indemnity Company of

America and Travelers Property Casualty Company of America (collectively "Travelers") seeks

a judicial declaration that it has no obligation under certain insurance policies to defend,

indemnify, or otherwise provide coverage with respect to two putative class actions concerning

Luna Gourmet Coffee & Tea Company LLC ("Luna")'s wholly owned subsidiary BCC Assets,

LLC d/b/a Boyer's Coffee Company, Inc. ("Boyer's") using the term "Kona" in selling coffee

products. The two lawsuits are *Bruce Corker et al. v. Costco et al.*, No. 2:19-cv-00290, and

*Michael Bond et al. v. Costco et al.*, No. 2:19-cv-0305, both of which were filed in the United

States District Court for the Western District of Washington ("Kona Actions").

2.      The plaintiffs in the Kona Actions allege that only coffee grown in the Kona District of the Big Island of Hawaii is true Kona coffee. They further allege Luna, through its subsidiaries, marketed and/or packaged coffee products using the term "Kona" even though the coffee products contained no significant or meaningful amount of coffee beans from the Kona District.

3.      Luna is the named insured under commercial insurance and commercial excess liability insurance policies issued by Travelers. Boyer's is a wholly-owned subsidiary of Luna whom the underlying plaintiffs have sued as a named defendant in the Kona Actions.

4.      The commercial insurance and umbrella liability insurance policies issued by Travelers to Luna afford no coverage to Luna for the Kona Actions. The putative class plaintiffs do not allege Luna is legally obligated to pay covered damages for "bodily injury," "property damage," "personal injury," or "advertising injury," as those terms are defined in the policies. Moreover, the Travelers policies contain several applicable exclusions. In light of these considerations, the Court should enter a declaratory judgment that the Travelers policies afford no coverage for the Kona Actions and that Travelers is not obligated to defend or indemnify Luna with respect thereto.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff The Travelers Indemnity Company of America is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

6.      Plaintiff Travelers Property Casualty Company of America is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

7.      Defendant Luna is a Colorado limited liability company with its principal place of business in Denver, Colorado.

8.      Defendant BCC Assets, LLC d/b/a Boyer's Coffee Company, Inc., is a Colorado limited liability company with its principal place of business in Denver, Colorado.

9.      The members of Defendants are citizens of Colorado, Texas, Florida, or Virginia. None of Defendants' members is a citizen of Connecticut.

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on complete diversity of citizenship and the amount in controversy exceeding $75,000.

11.     Venue is proper under 28 U.S.C. § 1391 because Defendants Luna and Boyer's reside in this judicial district, because the insurance policies that are the subject of this declaratory judgment action were issued in this judicial district, or because a substantial part of the events giving rise to this action occurred in this judicial district.

## GENERAL ALLEGATIONS

I.      **THE KONA ACTIONS**

      A.      **The Kona Consumers Action**

12.     In March 2019, alleged consumers and purchasers of coffee products labeled "Kona" coffee filed a putative class action complaint (the "Kona Consumers Action") against coffee distributors, wholesalers, and retailers for damages and other relief in the United States District Court for the Western District of Washington, Case No. 2:19-CV-00305. A true and correct copy of the complaint is attached as Exhibit 1.

13.     The Kona Consumers Action seeks over $5,000,000 in damages. (Ex. 1, ¶ 26.)

14.     The Kona Consumers Action defines its putative class as including over one-million members that

> include all consumers who, during the applicable statute of limitations period preceding the commencement of this action ("Class Period"), purchased coffee falsely labeled as "Kona" coffee, which was manufactured and/or sold by any of the Defendants named in this action. The Class excludes any consumer who otherwise satisfies the class definition except that their purchase of coffee falsely labeled as "Kona" occurred solely within the State of Hawaii. This Class further excludes any party named as a defendant in this action, even if that party otherwise meets the definition of class membership.

(Ex. 1, ¶¶ 30-31.)

15.     The Kona Consumers Action alleges only coffee grown in Hawaii's Kona District can be sold as Kona coffee. (Ex. 1, ¶¶ 36-37.)

16.     The Kona Consumers Action alleges the defendants' coffee products are presented to consumers as Kona coffee but "actually contain cheap commodity coffee beans" and some "packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all." (Ex. 1, ¶ 42.)

17.     The Kona Consumers Action alleges:

> Defendants unambiguously represent in their marketing and packaging that the products they are selling to consumers contain Kona coffee. The labels and packaging contain other misrepresentations intended to mislead consumers as to the contents and quality of the Defendants' coffee products. This deception is done to mislead and confuse consumers into purchasing Defendants' coffee or pay a higher price than they otherwise would for the type of coffee actually contained in the coffee products manufactured and/or sold by Defendants.

(Ex. 1, ¶ 43.)

18.     Among the defendants in the Kona Consumers Action is Boyer's (Ex. 1, ¶ 9.)

19.     The Kona Consumers Action alleges Boyer's is a wholly owned subsidiary of Luna. (Ex. 1, ¶ 9.)

20.     The Kona Consumers Action alleges Boyer's sells coffee products throughout the United States through its online store and through national retailers including Amazon, Walmart, and Safeway. (Ex. 1, ¶ 9.)

21.     The Kona Consumers Action alleges Boyer's "misrepresents the geographic origin, quality and contents of its 'Kona' coffee products with the prominent placement of KONA on the front of the packaging. Boyer's designs its packaging for its coffee products with the intent to deceive consumers as to the product's origin, quality and contents." (Ex. 1, ¶ 9.)

22.     The Kona Consumers Action alleges:

> Boyer's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. For example, Boyer's sells at least two different "Kona" coffee products. One is labeled "Café Kona" and the other is labeled "Kona Blend." The Boyer's packaging is intended to mislead the consumer into believing that the product contains a significant amount of Kona coffee beans, when the product actually contains little to no Kona coffee. The deceptive product names are intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Boyer's coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Boyer's charges for what is actually less expensive commodity coffee. By using the term "Kona" to describe its products, Boyer's is falsely designating the geographic origin of the product, creating confusion around the geographic origin, and damaging the geographic designation itself.

(Ex. 1, ¶ 84.)

23.     The Kona Consumers Action alleges Boyer's labels identifying Kona as the origin of the coffee are false. (Ex. 1, ¶¶ 86-87.)

24.     The Kona Consumers Action alleges Boyer's coffee products contain "very little Kona coffee, if any." (Ex. 1, ¶ 88.)

25.     The Kona Consumers Action alleges Boyer's packaging and labeling violates consumer expectations because Boyer's coffee products are not pure Kona coffee or are not a

blend of Kona and other coffees that contain a meaningful percentage of Kona beans that enables consumers to taste the Kona coffee beans. (Ex. 1, ¶¶ 87-89.)

26.     The Kona Consumers Action raises four claims for relief: (1) breach of express warranty under the Uniformed Commercial Code §§ 2-313, 2-714 & 2-607; (2) breach of implied warranty under the Uniformed Commercial Code §§ 2-314, 2-714 & 2-607; (3) common law fraud, fraudulent concealment, and intentional misrepresentation; and (4) quasi-contract/unjust enrichment/restitution. (Ex. 1, ¶¶ 122-150.)

**B.     The Kona Farmers Action**

27.     In February 2019, alleged Kona coffee farmers filed a class action complaint (the "Kona Farmers Action") against coffee distributors, wholesalers, and retailers for damages and other relief in the United States District Court for the Western District of Washington, Case No. 2:19-CV-00290. A true and correct copy of the complaint is attached as Exhibit 2.

28.     The Kona Farmers Action seeks treble damages and disgorgement of all profits by the defendants in that case. (Ex. 2, ¶¶ 142-43.)

29.     The Kona Farmers Action defines its class to include between 600 and 1000 members defined as:

> all persons and entities who, during the applicable statute of limitations period preceding the commencement of this action, commercially farmed Kona coffee in the Kona District and then sold their Kona coffee. The Class excludes any party named as a defendant in this action, even if that party otherwise meets the definition of class membership.

(Ex. 2, ¶¶ 32-33.)

30.     The Kona Farmers Action alleges only coffee grown in Hawaii's Kona District can be sold as Kona coffee. (Ex. 2, ¶¶ 38-39.)

31.     The Kona Farmers Action alleges the defendants' coffee products are presented to consumers as Kona coffee but "actually contain cheap commodity coffee beans" and some "packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all." (Ex. 2, ¶ 45.)

32.     The Kona Farmers Action alleges:

First, the Defendants flood the market with what appears to be Kona coffee. This tremendous supply of counterfeit Kona coffee pushes prices down sharply. And that low pricing artificially restrains the profitability of legitimate Kona coffee farms. Second, the Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price. That consumer will be unwilling to pay a premium price for Kona in the future.

(Ex. 2, ¶ 46.)

33.     Boyer's is a named defendant in the Kona Farmers Action. (Ex. 2, ¶ 10.)

34.     The Kona Farmers Action alleges Boyer's sells coffee products throughout the United States through its online store and through national retailers including Amazon, Walmart and Safeway. (Ex. 2, ¶ 10.)

35.     The Kona Farmers Action alleges Boyer's "falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the packaging." (Ex. 2, ¶ 10.)

36.     The Kona Farmers Action alleges:

Boyer's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. For example, Boyer's sells at least two different "Kona" coffee products. One is labeled "Café Kona" and the other is labeled "Kona Blend." The Boyer's packaging is intended to mislead the consumer into believing the that the product contains a significant amount of Kona coffee beans, when the product actually contains little to no Kona coffee. The deceptive product names are intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead

the consumer into believing that Boyer's coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Boyer's charges for what is actually ordinary commodity coffee. By using the term "Kona" to describe its products, Boyer's is falsely designating the geographic origin of the product, creating confusion around the geographic origin, and damaging the geographic designation itself. Boyer's use of the term "Kona" in the context of extolling the virtues of Colorado roasting undermines the meaning of the term, damaging its value to the farmers of authentic Kona in the Kona District

(Ex. 2, ¶ 88.)

37.    The Kona Farmers Action alleges Boyer's labels identifying Kona as the origin of the coffee are false. (Ex. 2, ¶¶ 90-91.)

38.    The Kona Farmers Action alleges Boyer's coffee products contain "very little Kona coffee, if any." (Ex. 2, ¶ 92.)

39.     The Kona Farmers Action alleges the packaging and labeling violates consumer expectations because Boyer's coffee products are not pure Kona coffee or are not a blend of Kona and other coffees that contains a meaningful percentage of Kona beans that enables consumers to taste the Kona coffee beans. (Ex. 2, ¶¶ 91-93.)

40.    The Kona Farmers Action purports to raise one cause of action under the Lanham Act (11 U.S.C. § 1125(a)) for (1) false designation of origin, (2) false advertising, and (3) unfair competition. (Ex. 2, ¶¶ 127-138.)

## II.    THE POLICIES

41.    The Travelers Indemnity Company of America issued commercial insurance policy number Y-630-7G2775740-TIA-19 to named insured "Luna Gourmet Coffee & Tea Company LLC" at 7295 N Washington Street, Denver, Colorado 80229, with a policy period of February 1, 2019 to February 1, 2020 (the "2019 Commercial Policy").

42.     The 2019 Commercial Policy was a renewal policy. Travelers issued materially identical prior commercial insurance policies to Luna for the policy periods, February 1, 2018 to February 1, 2019, February 1, 2017 to February 1, 2018, and February 1, 2016 to February 1, 2017 ("Commercial Policies").

43.     Travelers Property Casualty Company of America issued commercial excess liability (umbrella) insurance policy number CUP-1J187260-19-14 to named insured "Luna Gourmet Coffee & Tea Company LLC" at 7295 N Washington Street, Denver, Colorado 80229, with a policy period of February 1, 2019 to February 1, 2020 (the "2019 Umbrella Policy").

44.     The 2019 Umbrella Policy was a renewal policy. Travelers issued materially identical prior umbrella policies to Luna for the policy periods, February 1, 2018 to February 1, 2019, February 1, 2017 to February 1, 2018, and February 1, 2016 to February 1, 2017 ("Umbrella Policies").

45.     The Commercial Policies and the Umbrella Policies include insurance for bodily injury, property damage, personal injury, and advertising injury, subject to each policy's terms and conditions.

### A.     Provisions in the Commercial Policies

46.     Each of the Commercial Policies has a "General Aggregate Limit" of $4,000,000, a "Personal & Advertising Injury Limit" of $2,000,000, and an "Each Occurrence Limit" of $2,000,000.

47.     At all relevant times, the Commercial Policies included the following Coverage B provisions:

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

* * *

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

#### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

* * *

#### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

48.    At all relevant times, the Commercial Policies included the following provisions:

## SECTION V DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for

10

the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

49. At all relevant times, the Commercial Policies contained an endorsement titled

"Amendment of Coverage B – Personal and Advertising Injury Liability," which included the

following provisions:

### A. AMENDMENT OF DEFINITION OF PERSONAL AND ADVERTISING INJURY

The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:

"Personal and advertising injury" means "personal injury" or "advertising injury".

### B. AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION EXCEPTION FOR DAMAGES BECAUSE OF PERSONAL INJURY ASSUMED BY NAMED INSURED IN AN INSURED CONTRACT

    **1.** The following is added to Exclusion **e.**, **Contractual Liability**, in Paragraph **2.** of **SECTION I COVERAGES COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

This exclusion also does not apply to liability for damages because of "personal injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal injury", provided that:

**(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

**(2)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

## D. AMENDMENT OF OTHER EXCLUSIONS

**1.** The following replaces Exclusion **b.**, **Material Published With Knowledge Of Falsity**, in Paragraph **2.** of **SECTION I COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**b. Material Published With Knowledge Of Falsity**

"Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

**2.** The following replaces Exclusion **c.**, **Material Published Prior To Policy Period**, in Paragraph **2.** of **SECTION I – COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**c. Material Published Or Used Prior To Policy Period**

**(1)** "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the be-ginning of the policy period; or

**(2)** "Advertising injury" arising out of infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed before the beginning of the policy period.

\* \* \*

**4.** The following replaces Exclusion **g.**, **Quality Or Performance of Goods - Failure To Conform To Statements**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**g. Quality Or Performance Of Goods – Failure To Conform To Statements** "Advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**5.** The following replaces Exclusion **h.**, **Wrong Description Of Prices**, in Paragraph **2.** of **SECTION I COVERAGES COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**h. Wrong Description Of Prices**
"Advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "ad[]vertisement".

**6.** The following replaces Exclusion **i.**, **Infringement Of Copyright, Patent, Trade mark, Or Trade Secret**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**i. Intellectual Property**
"Personal injury" or "advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

**(1)** Copyright;
**(2)** Patent;
**(3)** Trade dress;
**(4)** Trade name;
**(5)** Trademark;
**(6)** Trade secret; or
**(7)** Other intellectual property rights or laws.

This exclusion does not apply to:

**(1)** "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or
**(2)** Any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

* * *

13

### G. ADDITIONAL DEFINITIONS

The following is added to the **DEFINITIONS** Section:

"Advertising injury":

**a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

    **(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

    **(2)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

      **(a)** Appropriates a person's name, voice, photograph or likeness; or

      **(b)** Unreasonably places a person in a false light; or

    **(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

\* \* \*

"Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

    **(1)** Any person or organization, other than you; or

    **(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

50.    At all relevant times, the Commercial Policies included the following Coverage A provisions:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage: to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

\*\*\*

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

**2. Exclusions**

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

**B.     The Umbrella Policies**

51.     Each of the Umbrella Policies has an "Aggregate Limits of Liability" of $10,000,000 and a "Personal and Advertising Injury Liability" limit of $10,000,000.

52.     At all relevant times, the Umbrella Policies contained provisions materially identical for present purposes to the pertinent provisions of the Commercial Policies.

**III.     THE CLAIM**

53.     Luna and Boyer's requested insurance coverage for the Kona Actions under the Policies.

54.     The Kona Actions do not seek damages covered by the Policies.

55.     Travelers has therefore disclaimed coverage under the Policies for the Kona Actions.

## CLAIM FOR RELIEF: DECLARATORY JUDGMENT

56.     Travelers incorporates the above paragraphs as if set forth in full herein.

57.     There is a real, substantial, and justifiable issue in controversy between the parties hereto with respect to insurance coverage under the Policies.

58.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between the parties.

59.     A judicial determination and a declaration of the rights and obligations of the parties are necessary and appropriate at this time.

60.     Travelers requests that the Court determine that Travelers has no obligation under the Policies to defend, indemnify, or otherwise provide coverage with respect to the Kona Actions.

61.     Specifically, Travelers requests a judicial determination: (i) that the Kona Actions do not seek damages because of "bodily injury" or "property damage" caused by an "occurrence" under Coverage A of the Commercial Policies or the Umbrella Policies; and (ii), even if they did, that the exclusions for "Expected Or Intended Injury" or "Damage To Your Product" bar any duty to defend or indemnify.

62.     Travelers also requests a judicial determination that (i) the Kona Actions do not seek damages because of "personal injury" or "advertising injury" under Coverage B of the Commercial Policies or the Umbrella Policies; (ii) that the term "Kona" is not a "slogan" as that term is defined by the Policies; and (iii) even if damages for "personal injury" or "advertising injury" were at issue, the Policies' exclusions for "Quality Or Performance Of Goods - Failure To Conform To Statements," "Material Published With Knowledge Of Falsity," "Knowing Violation of Rights of Another," "Wrong Description of Price," "Unauthorized Use Of Another's Name Or Product," and intellectual-property claims bar any duty to defend or indemnify.

63.     A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties under the Policies.

## **CONCLUSION**

WHEREFORE, Travelers prays for a judgment as follows:

64.     An order of the Court declaring, adjudicating, decreeing, and clarifying the rights and responsibilities of Travelers and Luna, and each of them, as follows:

That The Travelers Indemnity Company and Travelers Property Casualty Company of America have no obligation under the Policies to defend, indemnify, or otherwise provide coverage with respect to the following civil actions: *Bruce Corker et al. v. Costco et al.*, No. 2:19-cv-00290 (W.D. Wash.), and *Michael Bond et al. v. Costco et al.*, No. 2:19-cv-0305 (W.D. Wash.).

65.     An award of costs and attorney fees as permitted by applicable law.

66.     Such other and further relief as the Court may deem proper.

Dated:  July 15, 2019                    Respectfully submitted,


                                         *s/ Evan Bennett Stephenson*
                                         Evan Bennett Stephenson
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO  80202-5647
                                         Telephone:  303.244.1800
                                         Facsimile:  303.244.1879
                                         Email:   stephenson@wtotrial.com

                                         Attorney for Plaintiffs The Travelers Indemnity
                                         Company and Travelers Property Casualty
                                         Company of America